UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY JEROME TAYLOR,

                              Plaintiff,                    13 Civ. 5995(VB)(PED)

            - against -                                     <u>REPORT AND</u>
                                                            <u>RECOMMENDATION</u>
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

TO:   THE HONORABLE VINCENT L. BRICCETTI
      UNITED STATES DISTRICT JUDGE

## I. <u>INTRODUCTION</u>

Plaintiff Jeffrey Jerome Taylor ("Plaintiff"), proceeding *pro se*, brings this action
pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security
(the "Commissioner") denying his application for benefits on the ground that he is not disabled
within the meaning of the Social Security Act (the "Act"), 42 U.S.C. §§ 423 *et seq.* The matter
comes before this Court pursuant to an Order of Reference dated September 3, 2013. Dkt. 5.
Presently before this Court is the Commissioner's motion for judgment on the pleadings pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure. Dkts. 11 (Def.'s Notice of Mot.), 12
(Def.'s Mem. of Law in Supp. of the Commissioner's Mot. for J. on the Pleadings ("Def.'s
Mem."). For the reasons set forth below, I respectfully recommend that Defendant's motion be
**DENIED** and the case **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four, for further
administrative proceedings.[1]

---

[1] "Although a remand request is normally made by a party, there is no reason why a court
may not order the remand *sua sponte*." <u>Clark v. Callahan</u>, No. 96 Civ. 3020(SAS), 1998 WL
512956, at *1 (S.D.N.Y. Aug.17, 1998) (internal quotation marks omitted). Copies of

## II.  BACKGROUND

**A.      Evidence in the Administrative Record**

Plaintiff was born on October 16, 1966 and was forty-three years old at the time he applied for disability benefits.  His application states that he became disabled and has been unable to work since November 27, 2009 due to AIDS, herpes, shingles, and back pain associated with scoliosis.  R. 10, 14, 22, 29, 66, 70, 78.[2]  Plaintiff is a high school graduate and maintained steady employment in the years preceding his disability application.  Specifically, Plaintiff worked for nine years as a restaurant host, one month as stock room employee, and two years as short order cook, before he stopped working due to his medical conditions.  R. 70, 72, 86, 102, 151.

### 1.      *HIV Diagnosis*

Plaintiff is diagnosed HIV positive and receives regular HIV monitoring and treatment at Lincoln Hospital in the Bronx.  Numerous medical reports from his treating physician at this hospital appear in the record.  None indicate that Plaintiff experienced any complications associated with the infection, with one exception.  R. 125, 142, 169–77, 179–81, 213–15, 219. An April 1, 2010 record reflects that Plaintiff complained of a painful rash on his right flank, was diagnosed with shingles, and received treatment.  R. 129–30, 176, 194.  An April 27, 2010 record by Plaintiff's treating physician indicates that his HIV and shingles diagnoses present him with no functional limitations.  R. 130.

---

unreported cases will be mailed to the *pro se* plaintiff.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[2] Citations to "R. __" refer to the administrative record that was filed with the Commissioner's Answer.  Dkt. 10.

2.     *Scoliosis and Pain Diagnoses*

i.     **Treatment Records**

Plaintiff was diagnosed with scoliosis when he was younger.  R. 24.  He testified that his back condition has deteriorated over time.  R. 24.  On August 29, 2009, he slipped and fell and went to the emergency room at Lincoln complaining of pain in his left leg and back.  X-rays were taken and no fracture, soft tissue swelling or foreign object were observed from the films. Plaintiff was able to move all of his extremities.  Before Plaintiff was discharged, his left knee was bandaged and he was given crutches and pain reliever.  R. 174, 182–189.

Plaintiff continued to complain of back and left leg pain following his fall.  R. 111, 114, 116–18, 135–39, 158, 160, 162, 181.  As noted above, he stopped working on November 27, 2009 due to medical conditions.  In December 2009, Plaintiff also began to complain about pain in his left heel.  R. 138–39, 162.  At that time, Plaintiff was diagnosed with "low back pain with scoliosis, left knee and heal [*sic*] pain."  R. 116–17, 121–22, 141, 163, 165–66.  Plaintiff's pain was described as a "3" or "4."  R. 118, 163.  A December 2009 report from FEGS[3] opined that Plaintiff could "do light job[s]," so long as he worked in an "[a]ccessible facility" that had accommodations such as ramps, accessible bathrooms, automatic doors, and elevators; and so long as Plaintiff was able to avoid stairs, avoid rush hour travel, and limit tasks that required climbing or lifting.  R. 108, 118, 121, 140, 163, 165–66.  FEGS also reported that in December 2009, Plaintiff was able to engage in certain activities of daily living such as washing dishes, washing clothes, watching television, cooking, reading, making beds, socializing, dressing,

---

[3] Defendant describes FEGS as "a not-for-profit corporation that provides a variety of services, including employment, career, and workforce development."  Def.'s Mem., at 4 n.3.

bathing, using the toilet, and grooming.  R. 108–09, 156.  However, Plaintiff also reported at that time that "he [was] not able to stand for long periods due to problems with legs and back," that "he [was] not able to stand and function as he once did," and "that due to back problems he [had] limitations to [*sic*] performing some daily living activities."  R. 108, 110, 156–57.

### ii.    Consultative Examination

Plaintiff was referred to Industrial Medicine Associates, P.C. by the Division of Disability Determination for an internal medical examination.  Its June 12, 2010 report noted, among other things, that Plaintiff described his condition as having "mid spinal pain, 7/10," which is a "sharp" pain that "radiates to the gluteal region," and which gets "better with lying down and using a belt while lying down, and worse when standing."  R. 196.  The report also noted that Plaintiff complained of pain in his left lower leg, which Plaintiff described as "7/10, better with Motrin and rest, and worse with putting pressure on it."  R. 196.  Plaintiff admitted that he had not had this condition evaluated.  R. 196.  Plaintiff reported that his activities of daily living included showering, dressing himself, watching television, listening to the radio, and reading.  He reported that his mother now does the cooking, cleaning, laundry, and shopping.  R. 196.

Upon examination, the Industrial Medicine Associates physician found Plaintiff to be in "no acute distress," with a normal gait and stance, able to walk on his heels and toes without difficulty, able to fully squat, and required no assistive devices.  R. 197.  However, the physician found, *inter alia*, that Plaintiff had "[m]arked scoliosis," full flexion in the cervical and lumbar spine, bilateral flat feet, and "left superficial varicosities in the lower extremity and tenderness in the popliteal fossa of the left lower extremity" without obvious swelling.  R. 197–98.  He was diagnosed with back pain associated with his scoliosis, "[l]eft lower extremity pain," which gets

4

"worse on exertion," flat feet, and HIV.  R. 198.  He was given a "[f]air prognosis and the report concluded that Plaintiff had a "marked impairment to heavy lifting, carrying, pushing, and pulling," should be evaluated for his leg pain, and "should avoid prolonged walking, climbing, and standing."  R. 198.

### iii.   Disability Examiner

Plaintiff was also sent to a disability examiner for a physical residual functional capacity assessment.  The consultant's June 26, 2010 report noted that Plaintiff could occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, sit or walk for about 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and push or pull without limitation.  R. 201–02.  The report stated that its conclusion was based upon a review of the June 12, 2010 report described above, of which the consultant (erroneously) described as reporting that Plaintiff had made "no complaints of pain."  R. 202.  The disability examiner also found that Plaintiff was "[o]ccasionally" limited in climbing ramps, stairs, ladders, ropes, and scaffolds; and "[o]ccasionally" limited in kneeling, crouching, and crawling.  R. 203.  However, the examiner did not cite to evidence in support of this conclusion.  R. 203.

### iv.   Other Medical Documents in the Record

A list of medications Plaintiff takes is included in the administrative record.  Among these include 600mg of ibuprofen for pain, taken four times or more per day, which Plaintiff first started taking sometime in 2010.  R. 88.  An undated medical treatment worksheet is also in the administrative record.  It states that Plaintiff receives weekly physical therapy treatments at

Lincoln Hospital, which began in October or November 2010.[4]  R. 90.  An undated document described as "Disability Report–Appeal"[5] is also included in the record and states that Plaintiff requires assistance from his brother in order to get dressed.  R. 81.  Plaintiff also stated in the document that he "used to be more active . . . since April than [he] is now," that his "back is always bothering" him, and that he "can not stand up for long periods of time with out being in pain."  R. 81.

v.    <b><u>Hearing Testimony</u></b>

Plaintiff testified during an August 10, 2011 hearing before an administrative law judge ("ALJ").  Among other things, he testified that he stopped working for medical reasons associated with his back; that he treats his scoliosis with physical therapy sessions every other week, as well as with prescribed pain medication everyday; that he gets "sharp pains" in his back and has to wear a belt for his back; that he is able to walk and stand for only short periods of time; that he can lift fifteen pounds; and that his back has deteriorated over the years and now prevents him from engaging in activities that he used to be able to engage in, such as cooking.  R. 22–24, 27–28.  An impartial medical expert also testified at the hearing.  Among other things, the expert testified that she reviewed Plaintiff's medical records and that, in her opinion, Plaintiff's impairments–either singly or in combination–did not meet or equal a Social Security Administration listing for disability.  R. 24–27.

---

[4] Plaintiff submitted additional records after appealing the ALJ's decision to the Appeals Council.  R. 211–19.  Among these include additional records documenting Plaintiff's physical therapy treatments.  R. 217–18.  As discussed below, however, the undersigned has not considered those additional documents.

[5] Based on the date that the document states was to be Plaintiff's next medical appointment, the document was probably prepared sometime in late September 2010.  R. 79.

**B.**     **Disability Decisions**

Plaintiff applied for disability insurance benefits and supplemental security income on April 21, 2010. R. 10, 29. His application was denied on June 30, 2010. R. 31–36. On September 23, 2010, Plaintiff requested a hearing before an ALJ. R. 37–38, 39–46. A hearing was held on August 10, 2011. R. 18–28, 47–63, 64, 65. By decision dated September 12, 2011, the ALJ denied Plaintiff's claim. R. 7–17.

The ALJ determined that although Plaintiff suffered from severe impairments (HIV and back pain), those impairments did not meet or equal any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12. The ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work, although with certain accommodations and limitations. R. 12. He concluded that Plaintiff was not disabled pursuant to the Social Security Act. R. 15.

Plaintiff requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied his request on June 20, 2013. R. 1–6. The ALJ's September 12, 2011 decision thus became the final decision of the Commissioner and thereby is subject to review in this federal court action, which was commenced by Plaintiff on August 23, 2013. Dkt. 2.

## III. DISCUSSION

**A.**     **Legal Standards**

**1.**     ***Standard of Federal District Court Review***

Section 405(g) of Title 42 of the United States Code entitles a Social Security claimant to seek judicial review of the Commissioner's final decision denying such a claimant's application for disability benefits. District courts are empowered "to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "It is

not the function of a reviewing court to decide *de novo* whether a claimant was disabled."

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to

"'determin[ing] whether there is substantial evidence supporting the Commissioner's decision

and whether the Commissioner applied the correct legal standard.'" Poupore v. Astrue, 566 F.3d

303, 305 (2d Cir. 2009) (quoting Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)).

> **2.    *Determination of Statutory Disability***

To qualify for benefits under the Act, a claimant must demonstrate that he is disabled.

The Act defines "disability" as an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). In addition, a claimant

is eligible for disability benefits under the Act only if:

> his physical or mental impairment or impairments are of such severity that he is not
> only unable to do his previous work but cannot, considering his age, education, and
> work experience, engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

Id. § 423(d)(2)(A); id. § 1382c(a)(3)(B).

The SSA uses the following five-step analysis to evaluate disability claims:

1.    The Commissioner considers whether the claimant is currently engaged in
substantial gainful activity.
2.    If not, the Commissioner considers whether the claimant has a "severe
impairment" which limits his or her mental or physical ability to do basic
work activities.

3.      If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.      If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). In determining whether a claimant is disabled, the Commissioner must consider "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983); see also 20 C.F.R. § 404.1529. "'[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled.'" Cruz v. Astrue, No. 06 Civ. 3670 (LTS)(DCF), 2009 WL 1024242, at *13 (S.D.N.Y. Apr. 9, 2009) (quoting §§ 404.1529(a), 416.929(a)).[6] "Where an ALJ makes a credibility assessment and decides to discount a claimant's subjective complaints of pain, the reviewing court must defer to that credibility assessment, as long as the ALJ's findings are supported by substantial evidence." Id.

**3.**      ***Substantial Evidence***

---

[6] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

"In determining whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Mongeur, 722 F.2d at 1038). Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard." Brault v. Soc. Sec. Admin, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. See 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Accordingly, "once an ALJ finds facts," the reviewing court "can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in original).

4.      ***Treating Physician Rule***

In considering any medical opinions set forth in the administrative record, the ALJ should give the opinion of a claimant's treating physician "'controlling weight'" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Ocasio v. Colvin, No. 12 Civ. 6002(JG), 2013 WL 1395846, at *9 (E.D.N.Y. Apr. 5, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). A "'treating source'" is a claimant's "'own physician, psychologist, or other acceptable medical

source who provides [a claimant], or has provided [a claimant] with medical treatment or evaluations and who has, or has had, an ongoing treatment relationship with [a claimant].'"[7] Id. at *9 n.26 (quoting 20 C.F.R. § 404.1502).

### 5.     *Duty to Develop Record*

Given the "non-adversarial nature" of the administrative proceedings, the ALJ "has an obligation to develop the record . . . regardless of whether the claimant is represented by counsel." Shaw, 221 F.3d at 131.  Because the "treating physician rule dovetails with the ALJ's affirmative duty to develop the administrative record," the "duty of the ALJ is 'particularly important when it comes to obtaining information from a claimant's treating physician.'" Ocasio, 2013 WL 1395846, at *9 (quoting Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002)).  Accordingly, the ALJ's obligation to develop the record "includes obtaining the treating physicians' assessments of the claimant's RFC." Id.  It is appropriate to "remand[] to the Commissioner with directions to develop the administrative record further and to reconsider" where necessary to ensure an accurate assessment of a claimant's entitlement to benefits based on a fully developed record.  Burger v. Astrue, 282 F. App'x 883, 885 (2d Cir. 2008).

### B.     Analysis

#### 1.     *Additional Medical Records*

Plaintiff submitted additional medical records from December 6, 2013 through February 12, 2014 in response to the Commissioner's motion for judgment on the pleadings.  See

---

[7] An "ongoing treatment relationship" exists where the claimant "see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."  20 C.F.R. § 404.1502. The SSA "may consider an acceptable medical source who has treated or evaluated [the claimant] only a few times . . . to be [the claimant's] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)."  Id.

Plaintiff's Affirmation in Opposition to the Motion ("Pl.'s Affirm."), at 3–6 (unpaginated) (Dkt. 14).  He now also alleges that he is disabled on the basis of, *inter alia*, a hypertension diagnosis. Id. at 2.  This Court has not reviewed Plaintiff's new evidence, nor considered his new claim of disability.  See, e.g., Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (emphasis added) (court may remand case back to Commissioner to consider new evidence where, among other things, plaintiff shows that the new evidence is "material, that is, both relevant to the claimant's condition *during the time period for which benefits were denied* and probative"); Casiano v. Apfel, 39 F. Supp. 2d 326, 332 (S.D.N.Y. 1999) (collecting cases and denying remand where new evidence submitted in support of plaintiff's application concerned the time period following the Commissioner's final decision); Grubb v. Charter, 992 F. Supp. 634, 637 n.3 (S.D.N.Y. 1998) (new evidence not considered because "[a] court's review of the Commissioner's decision is to be based upon the administrative record").

### 2.   *The ALJ's Decision*

#### i.   The Legal Test Applied

The record in this case reveals that the ALJ applied the correct five-step legal analysis set forth by the regulations.  R. 12–15; 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 27, 2009, the onset date of his alleged disability.  R. 12 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: HIV and back pain.  R. 12 (citing 20 §§ C.F.R. 404.1520(c), 416.920(c)).  At step three, the ALJ found that Plaintiff's impairments, either individually or

combined, did not meet one of the impairments listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. R. 12 (citing 20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925, 416.926).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work, which required "light residual functional capacity." R. 14. Instead the ALJ determined that Plaintiff's impairments provided him with "the residual functional capacity to perform the full range of sedentary work," but also found that Plaintiff "should avoid heavy lifting, carrying, pushing, and pulling and avoid prolonged walking, climbing and standing." R. 12 (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)). At step five, the ALJ determined that Plaintiff's impairments did not prevent him from finding and performing other work that is available in the national economy. R. 14 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).

The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 27, 2009, through the date of this decision." R. 15 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)). Accordingly, it is clear that the ALJ applied the correct legal test to evaluate Plaintiff's disability claim.

### ii.     The Determinations that Plaintiff's Impairments Do Not Meet or Equal an Impairment in the Appendix

The Commissioner argues that the final decision in this matter was supported by substantial evidence. See Def.'s Mem. at 1. Plaintiff has responded to the Commissioner's motion but does not address the arguments raised by the Commissioner. See generally Pl.'s Affirm.

### a.     HIV Infection

Plaintiff's HIV infection does not satisfy the requirements listed in Appendix 1. Section 14.08 pertains to HIV infections. To be found disabled under this section, the claimant must

show proper documentation of a positive HIV infection, and one of the following: bacterial

infection; fungal infection; protozoan or helminthic infection; viral infection; malignant

neoplasm; "conditions of the skin or mucous membranes . . . with extensive fungating or

ulcerating lesions not responding to treatment;" HIV encephalopathy; HIV wasting syndrome;

severe diarrhea; an infection from sepsis, menigitis, pneumonia, septic arthritis, endocarditis, or

sinusitis that is "resistant to treatment or require[s] hospitalization or intravenous treatment;" or

> Repeated . . . manifestations of HIV infection, including those listed in 14.08A–J, but
> without the requisite findings for those listings . . . or other manifestations . . .
> resulting in significant, documented symptoms or signs . . . and one of the following
> at the marked level . . . 1. Limitation of activities of daily living . . . 2. Limitation in
> maintaining social functioning . . . [or] 3. Limitation in completing tasks in a timely
> manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404 Subpt. P, App'x 1 § 14.08(A)–(K).  Accordingly, a diagnosis of HIV positive

is not alone sufficient to qualify as a severe impairment under the regulations; the claimant must

also show that he or she has an additional, qualifying ailment.

Here, a review of the record reveals that Plaintiff was diagnosed with a shingles infection

on or about April 1, 2010.  R. 175–76, 194.  The regulations specifically list herpes zoster

(commonly known as shingles) as a qualifying viral infection under Section 14.08.  Id. §

14.08(D)(3).  However, the regulations require that the shingles infection be either

"[d]isseminated," or be associated "[w]ith multidermatomal eruptions that are resistant to

treatment."  Id. § 14.08(D)(3)(a)–(b).  There is no evidence in the record that suggests either

situation occurred in Plaintiff's case.

Likewise, the regulations state that an HIV infection will be deemed severe where it is

accompanied by another ailment that limits an individual's daily activities, social functioning or

ability to complete tasks.  Id. § 14.08(K).  The record in this case does not contain evidence of

any such limitation with respect to Plaintiff's HIV infection. To the contrary, records from Plaintiff's treating physician dated shortly after Plaintiff's shingles was diagnosed state that Plaintiff's condition presents him no limitations. R. 130, 132.

Accordingly, the ALJ's determination that Plaintiff's HIV infection did not meet or equal a listing found in Appendix 1 was supported by substantial evidence in the record.

### b.    *Scoliosis*

Section 1.00(L) of Appendix 1 provides that "[a]bnormal curvatures of the spine (specifically, scoliosis . . . ) can result in impaired ambulation, but may also adversely affect functioning in body systems other than the musculoskeletal system." 20 C.F.R. Pt. 404 Subpt. P, App'x 1, § 1.00(L). However, there is no evidence in the record to suggest that Plaintiff's scoliosis affected any body system other than the musculoskeletal. E.g., R. 116–17.

Appendix 1 further defines "[i]nability to ambulate effectively" as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

20 C.F.R. Pt. 404 Subpt. P, App'x 1, § 1.00(B)(2)(b)(1). It further states that,

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

15

Id. § 1.00(B)(2)(b)(2).

The record in this case does, however, reveal ambulation problems experienced by Plaintiff. For instance, Plaintiff's August 2009 slip and fall necessitated his use of crutches for a period of time. However, his use of this assistive device was temporary and accordingly did not affect his overall ability to effectively ambulate. R. 174, 182–89, 197. The record also reveals that Plaintiff had a normal gait and stance and could walk on heels and toes without difficulty, which suggests effective ambulation. R. 197–98. However, the record also identifies certain accommodations and limitations regarding Plaintiff's ambulatory abilities, including avoiding stairs, avoiding travel during rush hour, avoiding "prolonged" walking, and requiring access to ramps and elevators in a work-place setting. R. 118, 121, 139–40, 197–98. In addition, the record reveals that Plaintiff's mother does the grocery shopping and that Plaintiff testified he is not able to walk for 50 minutes at a time. R. 22, 196.

The extent to which this evidence represents "impaired ambulation" for purposes of the Regulations was not discussed by the ALJ. § 1.00(L). The decision simply concludes that Plaintiff's "activities of daily living are unrestricted," but does not discuss any of the ambulatory issues described above. R. 14. The ALJ supported this conclusion by first giving credit to the medical expert's testimony at the hearing. Specifically, the expert testified only that Plaintiff's impairments do not meet or equal a listing in the Appendix. R. 14. The medical expert did *not* testify about Plaintiff's ambulatory abilities or inabilities. R. 26–27. The ALJ next disregarded the June 12, 2010 report by the consultant physician, stating it was "unpersuasive. . . and . . . inconsistent with the other medical and non-medical evidence in the record." R. 14. However, the June 12, 2010 report found, among other things, that Plaintiff had a normal gait and could walk on his heels and toes without difficulty. R. 197–98. Such a finding would tend to support a

16

determination that Plaintiff's impairment does not affect ambulation for purposes of the

Regulations.  Moreover, the June 12, 2010 report's findings that Plaintiff should avoid stairs,

rush hour travel, and prolonged walking, and that Plaintiff should have access to ramps and

elevators, is–contrary to the ALJ's assertion–*consistent* with other evidence in the record.  E.g.,

R. 22, 118, 121, 139–40.

Finally, the ALJ supported his conclusion by finding Plaintiff's testimony "not at all

credible."  R. 14.  However, as discussed below, the ALJ failed to properly consider all of the

factors required by the Regulations for such a determination of credibility.

Accordingly, because the ALJ failed to discuss evidence in the record concerning

ambulatory issues, his determination that Plaintiff's scoliosis did not meet or equal a listing

found in Appendix 1 was not supported by substantial evidence.  I respectfully recommend that

the case be remanded on this basis.  See, e.g., Crossman v. Astrue, 783 F. Supp. 2d 300, 309–10

(D. Conn. 2010) (remanding where ALJ found obesity to be a severe impairment, but failed to

discuss, among other things, the limitations or effects it causes on plaintiff's ability to ambulate

effectively).

### iii.    Plaintiff's Credibility Determination

"In performing the evaluation process the Commissioner has established to determine

whether an individual is disabled for purposes of the Act, the ALJ must determine whether a

claimant who has a severe impairment nonetheless has the 'residual functional capacity' ('RFC')

to perform work available to him."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (internal

citations omitted).  "When determining a claimant's RFC, the ALJ is required to take the

claimant's reports of pain and other limitations into account, but is not required to accept the

claimant's subjective complaints without question; he may exercise discretion in weighing the

credibility of the claimant's testimony in light of the other evidence in the record." Id. (internal citations omitted). "The regulations provide a two step-process for evaluating a claimant's assertion of pain and other limitations." Id.

"At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(a)). If the ALJ determines that this is true, then "at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quoting § 404.1529(a)). "[W]here the ALJ finds that the medical evidence does not substantiate the claimant's" subjective allegations regarding pain and other limitations, "the ALJ must assess the claimant's credibility by considering seven factors enumerated in the Social Security regulations." Rivera v. Astrue, No. 10 CV 4324(RJD), 2012 WL 3614323, at *14 (E.D.N.Y. Aug. 21, 2012). These factors are:

(1) the claimant's "daily activities;"
(2) the "location, duration, frequency, and intensity" of the claimant's "pain or other symptoms;
(3) "[p]recipitating and aggravating factors;"
(4) the "type, dosage, effectiveness, and side effects of any medication" the claimant "take[s] or ha[s] taken to alleviate [his] pain or other symptoms;"
(5) "[t]reatment, other than medication," the claimant "receive[s] or ha[s] received for relief of [his] pain or other symptoms;"
(6) "[a]ny measures" the claimant "use[s] or ha[s] used to relieve [his] pain or other symptoms;" and
(7) "[o]ther factors concerning [his] functional limitations and restrictions due to pain or other symptoms."

20 C.F.R. § 404.1529(c)(3)(i)–(vii). Additionally, "[u]nder the substantial evidence standard, a credibility finding made by an ALJ is entitled to deference by a reviewing court." Acevedo v. Astrue, No. 11 Civ. 8853(JMF)(JLC), 2012 WL 4377323, at *11 (S.D.N.Y. Sept. 4, 2012)

18

(Report & Recommendation), adopted by 2012 WL 4376296 (S.D.N.Y. Sept. 24, 2012).

Nevertheless, "[a]n ALJ who finds that a claimant is not credible must do so 'explicitly and with

sufficient specificity to enable the Court to decide whether there are legitimate reasons for the

ALJ's disbelief and whether his determination is supported by substantial evidence.'" Rivera,

2012 WL 3614323, at *14 (quoting Taub v. Astrue, No. 10 Civ. 2526(ARR), 2011 WL 6951228,

at *8 (E.D.N.Y. Dec. 30, 2011)).  A claimant with a good work record is entitled to substantial

credibility when claiming an inability to work because of a disability. Singletary v. Sec'y of

Health, Edu. & Welfare, 623 F.2d 217, 219 (2d Cir. 1980).

      In this case, the ALJ correctly cited the two-step process described above to assess

Plaintiff's subjective complaints of pain and associated functional limitations.  The decision

states that, "[a]fter careful consideration of the evidence, the undersigned finds that the

claimant's medically determinable impairments could reasonably be expected to cause the

alleged symptoms; however the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment."  R. 13.  However, there is no discussion of

Plaintiff's residual functional capacity in the paragraphs preceding this language.  R. 12–13.  In

addition, to the extent the ALJ intended simply to refer to his introductory sentence (which states

that, "[a]fter careful consideration of the entire record, the undersigned finds that the claimant

has the residual functional capacity to perform the full range of sedentary work as defined in 20

CFR 404.1567(a) and 416.967(a)," and that "[h]e should avoid heavy lifting, carrying, pushing,

and pulling and avoid prolonged walking, climbing and standing," R. 12), the analysis is

conclusory.  See Norman v. Astrue, 912 F. Supp. 2d 33, 86 (S.D.N.Y. 2012) ("[T]he larger issue

is that it appears . . . that [the] ALJ . . . made a determination with respect to plaintiff's overall

RFC and then used that RFC to discount plaintiff's non-conforming allegations and resulting

limitations.  If this is what occurred, then the ALJ's credibility assessment (and, thus, RFC

assessment) was improperly performed.").

Moreover, the ALJ failed to apply the required seven-factor test set forth by 20 C.F.R. §

404.1529(c)(3)(i)–(vii).  First, the ALJ only considered some of the evidence concerning

Plaintiff's daily activities and functional limitations that appears in the record.  §

404.1529(c)(3)(i), (vii).  The ALJ did not address documents or Plaintiff's testimony at the

hearing where he describes his overall decline in functional activities.  E.g., R. 22–24, 27–28, 81,

108, 110, 156–57, 196.  Second, the ALJ's decision makes no reference to any of the following:

complaints by Plaintiff concerning pain, § 404.1529(c)(3)(ii); e.g., R. 22, 111, 114, 116–18,

121–22, 135–39, 141, 158, 160, 162–63, 165–66, 181, 196–98; the extent to which Plaintiff's

2009 slip and fall may be considered a precipitating factor, § 404.1529(c)(3)(iii); e.g., R. 22, 174,

182–89; Plaintiff's physical therapy treatments, § 404.1529(c)(3)(v); R. 22–23, 25, 90; or

Plaintiff's other efforts to relieve pain or stiffness, § 404.1529(c)(3)(vi); R. 23, 88, 196.  Third, to

the extent the ALJ's decision references Plaintiff's use of pain medication, it states simply that

after his 2009 slip and fall, the medical record indicates that he "uses nothing for discomfort

relief."  R. 13.  This is misleading.  Evidence in the record indicates that Plaintiff was prescribed

pain medication following his emergency room examination and that Plaintiff takes pain

medication on a daily basis.  R. 24, 88, 174, 182–89.  Additionally, as discussed above, the ALJ's

rejection of the June 12, 2010 report on the basis that its findings are not supported by other

evidence in the record is unfounded because there *is* other evidence in the record that indicates

Plaintiff experiences pain and ambulatory limitations. Id. § 404.1529(c)(3)(iv).  Absent reference to these factors, it cannot be said that the ALJ's credibility determination was supported by substantial evidence.  Finally, although the record indicates that Plaintiff maintained a steady work history prior to the onset date of his alleged disability, there is no indication that the ALJ took this history into consideration when assessing Plaintiff's credibility. See Singletary, 623 F.2d at 219.

Accordingly, because the ALJ failed to sufficiently and accurately discuss several factors relevant to determining Plaintiff's credibility, I respectfully recommend that the case be remanded on this basis as well. See, e.g., Norman, 912 F. Supp. 2d at 86 (remanding where ALJ's decision was conclusory and did not expressly discuss the factors listed in § 404.1529(c)(3)); Felder v. Astrue, No. 10 Civ. 5747(DLI), 2012 WL 3993594, at *14-15 (E.D.N.Y. Sept. 11, 2012) ("Because the ALJ did not discuss . . . all the applicable factors set forth in 20 C.F.R. § 404.1529(c)(3)(i)–(vii) in making her credibility determination analysis, the ALJ has committed legal error," and remanding); Rivera, 2012 WL 3614323, at *14-*15 (remanding where ALJ inaccurately reported facts relevant to determination of plaintiff's credibility); Valet v. Astrue, No. 10 Civ. 3282(KAM), 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding where ALJ discussed some, but not all, of the factors listed in § 404.1529(c)(3)).  On remand, the ALJ should re-assess Plaintiff's credibility in light of all the factors set forth in 20 C.F.R. § 404.1529(c)(3), as well as the evidence documented by the record.

## IV.  CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendant's motion for judgment on the pleadings be **DENIED** and that the case be **REMANDED** for further

administrative proceedings consistent with this Report & Recommendation pursuant to 42 U.S.C. § 405(g), sentence four.

Dated: _April 9_, 2014
      White Plains, New York

                                  Respectfully submitted,

                                  Paul E. Davison
                                  United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Vincent L. Briccetti, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

      Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

      Requests for extensions of time to file objections must be made to Judge Briccetti.